## SIOUX CITY STREET RAILWAY COMPANY *v.* SIOUX CITY.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 1228. Submitted January 8, 1891. — Decided January 26, 1891.

On December 12, 1883, the city of Sioux City, in Iowa, by ordinance, conferred on a street railway company, incorporated December 6, 1883, under the general laws of Iowa, the right of operating a street railway, with the requirement that it should pave the street between the rails. Subsequently, under an act of 1884, the city, by ordinance, required the com-

pany also to pave the street for one foot outside of the rails, and assessed a special tax against it for the cost of the paving outside of the rails : *Held*, that there was no contract between the company and the State or the city, the obligation of which was impaired by the laying of the tax.

Under section 1090 of the Code of Iowa, which was in force when the company was incorporated, its franchise was subject to such conditions as the legislature should thereafter impose as necessary for the public good.

THE Sioux City Street Railway Company became a corporation on December 6, 1883, under the general incorporation laws of the State of Iowa. On the 12th of December, 1883, the city of Sioux City, by an ordinance of the city council, conferred upon the company the right to locate, operate, construct and maintain street railways upon and along certain streets in the city, on the terms and conditions specified in such ordinance. Section 11 of the ordinance was as follows : " Sec. 11. Whenever, by resolution of common council, any street or part of street on which said track shall be laid and operated shall be ordered paved or macadamized, either at the expense of the city or owners of abutting property, then the said proprietors of said street railway shall pave or macadamize in the time and manner directed the space between the rails, and shall thereafter keep the same between the rails in good repair, and shall keep in good condition and repair the space between the tracks on all bridges that they cross." On the 18th of December, 1883, the company accepted the ordinance. Prior to March 18, 1884, the company had expended over $10,000 in constructing tracks on certain streets and for other purposes, and had contracted for material and supplies for constructing other tracks, and had its street railway in operation on certain streets, in accordance with the terms of the ordinance.

On March 15, 1884, the legislature of Iowa passed an act entitled " An act granting additional powers to certain cities of the first class, with reference to the improvement of streets, highways, avenues, or alleys and to provide a system for payment therefor." The 6th section of that act provided as follows : " All railway companies and street railway companies in cities of the first class, as provided in section one of this act,

shall be required to pave, or repave between rails and one foot outside of their rails, at their own expense and cost. Whenever any street, highway, avenue or alley shall be ordered paved or repaved by the council of any such city, such paving or repaving between and outside of the rails, shall be done at the same time and shall be of the same material and character as the paving or repaving of the street, highway, avenue or alley upon which said railway track is located, or of such other material as said council may order, and when said paving or repaving is done said companies shall lay in the best approved manner the strap or flat rail. Such railway companies shall keep that portion of the streets, highways, avenues or alleys between and one foot outside of their rails up to grade and in good repair, using for such purpose the same material with which the street, highway, avenue or alley is paved upon which the track is laid, or such other material as said council may order." Laws of 1884, p. 22.

On January 15, 1886, the city of Sioux City became a city of the first class, under the statutes of Iowa, and has continued to be such.

On the 11th of May, 1886, the city council passed an ordinance entitled " An ordinance providing for the paving of the streets between the rails of railways and street railways located thereon, and defining the manner of making special assessments to defray the cost and expenses thereof and the manner of enforcing and collecting the same," the first section of which provided as follows : " Sec. 1. That whenever the city council, etc., shall cause to be paved any street, avenue or alley whereon any railway has or shall be located and laid down, they shall also order and provide by resolution that the company or persons owning said railway or street railway, pave said street, avenue or alley between the rails of said railway or street railway, and one foot each side the rails thereof, at their own expense and cost : *Provided*, That the provisions of this section shall not in any manner be construed to affect any rights accrued or existing in favor of said railway companies or street railway company under any franchise or license heretofore granted under any ordinance heretofore

adopted by said city council." Under this ordinance, and a subsequent one passed May 25, 1886, and a resolution passed August 31, 1886, the city council ordered certain streets to be paved, including those parts, as to which the assessments involved in this suit were imposed, and provided for assessing to the street railway company the cost of paving the space between the rails and one foot outside thereof.

The assessment of a special tax against the company for the cost of paving the space outside of the tracks was made December 27, 1886. Prior to that time, the company had paid for so much of the paving as lay between the rails of its tracks. In proper time, after the resolution of August 31, 1886, was served upon the company, it filed its written objections thereto, as follows: "The Sioux City Street Railway Company objects to the resolution ordering the assessment of a special tax against said company for the cost of paving one foot outside of its railway tracks in improvement districts 2 and 3. It objects to having the cost of paving one foot outside of the railway track charged to it, or to have same in any manner assessed against it or against its property, and to having any resolution or ordinance passed charging the cost of said paving to it, or making any assessment against it or against its property, or seeking in any manner to collect said cost from it, or making same a lien upon the title to any of the property, by any ordinance, resolution or confirmation purporting to charge such cost against the said company or its property ; that, by the terms of the charter granting the company the right to locate, construct, and maintain its said railway, it was expressly provided, that the company should only be required to pave so much of the street wherein the track was constructed as should lie between the rails of said track, that the city of Sioux City thereby expressly contracted and agreed that this company should have the right to locate, construct, operate and maintain its said track in said streets, and should only be required to pave or keep in repair that portion thereof lying within the rails of its said tracks; that the said company, relying upon the charter and the ordinance granting it the right to locate and construct the tracks on the said

streets herein named and the provisions and conditions thereof, located, constructed, and has since operated its track and railway on the said streets, and has in all respects complied with all the conditions and requirements imposed upon it by said city by the said ordinance, and that said assessment of costs of paving one foot outside the rails of said railway tracks is a violation of the grant and contract of said city to and with this company, and is illegal and void." Notwithstanding this, the city council, on the 15th of March, 1887, overruled the objections of the company and confirmed the assessment.

Under this state of facts, the company, on the 30th of May, 1887, filed in the district court of the county of Woodbury, in the State of Iowa, its petition against the city of Sioux City and the city council of Sioux City, setting forth the foregoing facts and averring as follows: "That, by the terms of the charter granting to the plaintiff the right to locate, construct and maintain said street railway, it was expressly provided, that plaintiff should only be required to pave so much of the street whereon it constructed and operated its street railway as should lie between the rails of its said track, and the city thereby expressly contracted and agreed with plaintiff, that in consideration of its constructing and operating the said street railway over said streets, it should have the right so to do, and only be required to pave and keep in repair so much of the street as lies between its rails; and said company, relying on the ordinance and contract of said city, located and constructed at great expense said track, and has ever since operated and maintained the same, and the said ordinance and resolution requiring plaintiff to pay the cost of paving one foot outside of the track of the railway is a violation of said contract granting it the right to locate and construct the said railway. The said city council erred in passing said ordinance and resolution requiring plaintiff to pay the cost of paving one foot outside of their tracks, and erred in overruling their objections to the special charges and assessments made against said company for said cost of such paving, and in determining that the said cost of such paving should be charged to said plaintiff and against the property, and erred

in confirming said special assessments." The petition prayed for the issuing of an order for a writ of *certiorari* to the city council and for a reversal of its action.

On the 11th of February, 1889, the petition was amended by averring that section 6 of the act of March 15, 1884, in so far as it sought to impose upon the company the paving of one foot outside of its track, or to impose upon it the cost thereof, was a violation of subdivision 1 of section 10 of article 1 of the Constitution of the United States, as impairing the obligation of a contract, and that the ordinances of May 11, 1886, and May 25, 1886, and the resolutions of August 9, 1886, and December 27, 1886, were a violation of the same subdivision.

The defendants filed a demurrer to the petition and amendment, as follows: " That the facts stated herein do not entitle the plaintiff to the relief demanded, for that: 1. The said ground for relief, as stated in said petition and amendment thereto, is that the action of said city and its city council, in assessing the cost of paving of one foot outside the rail of the tracks of plaintiff's railway, impairs the obligation of the contract made between said city and plaintiff, while said petition and amendment thereto disclose that such is not the effect of said action of the city. 2. That said petition and amendment thereto show that, in making said assessment, the city of Sioux City, by its common council, only complied with the provisions of the law of the State of Iowa authorizing said assessment, and then in force. 3. That the said plaintiff took its charter as a corporation from the State subject to the reserved power of the State to abridge or modify said charter, and to regulate, withhold or impose any other conditions upon any franchise obtained by said corporation, and the said plaintiff took said franchise and ordinance from said city subject to the rights of said city to make any charge or assessment against its property which the legislature might provide by statute."

The District Court sustained the demurrer, dismissed the petition, and confirmed the assessments. The plaintiff appealed to the Supreme Court of Iowa, which affirmed the judgment, its opinion being reported in 78 Iowa, 367.

Section 1090 of the Code of Iowa, which was in force when the railway company became incorporated, provided as follows: "Sec. 1090. The articles of incorporation, by-laws, rules and regulations of corporations hereafter organized under the provisions of this title, or whose organization may be adopted or amended hereunder, shall, at all times, be subject to legislative control, and may be, at any time, altered, abridged or set aside by law, and every franchise obtained, used or enjoyed by such corporation may be regulated, withheld, or be subject to conditions imposed upon the enjoyment thereof, whenever the general assembly shall deem necessary for the public good."

*Mr. J. H. Swan* for plaintiff in error.

The ordinance granting the company the right to lay down and operate their railway constituted a contract between the city and the street railway company, and was governed by the terms and conditions set forth in it. *DesMoines* v. *Chicago, Rock Island &c. Railway,* 41 Iowa, 569; *Burlington* v. *Burlington Street Railway Co.,* 49 Iowa, 144, 147; *DesMoines Street Railway* v. *DesMoines Broad Gauge Railway,* 73 Iowa, 513; *State* v. *Corrigan Street Railway,* 85 Missouri, 263; *Coast Line Railway* v. *Savannah,* 30 Fed. Rep. 646; *Chicago* v. *Sheldon,* 9 Wall. 50.

It is claimed that the right reserved in section 1090, of the Code of Iowa of 1873, reserved to the State the right to make this change, and to inject into and make a part of this contract the additional conditions here imposed.

This ordinance or contract between the city and the street railway company is neither part of the articles of incorporation, by-laws, rules or regulations of the corporation, nor is it a franchise coming within the meaning of section 1090 of the Code of Iowa.

The city, by law, is the owner and controls the streets which the railway company desires to obtain the use of to lay the tracks, and has power to grant this use on such terms and conditions as may be agreed upon. The manufacturer or dealer

owns the iron and ties which he will grant upon such terms as may be agreed upon. The contract with the city is made for the use of certain streets upon which to lay and operate its road, and the terms and conditions are agreed upon. This is a right acquired by contract which has become vested under the charter in the legitimate exercise of lawful power, and stands upon a different footing from the rights obtained from the State by the incorporation. The State only asserts its power to modify, withhold or change its own contract with the corporators. It does not contend for a power to revoke the contracts of the corporation with other parties, or impair the vested rights acquired thereby. Such is the language of this court in *Tomlinson* v. *Jessup*, 15 Wall. 454, 459. See also *New Jersey* v. *Yard*, 95 U. S. 104; *Miller* v. *State*, 15 Wall. 478, 498; *Railroad Co.* v. *Maine*, 96 U. S. 499, 510; *Sinking Fund Cases*, 99 U. S. 700, 720 ; *Greenwood* v. *Freight Co.*, 105 U. S. 13 ; *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347; *Railway Co.* v. *Philadelphia*, 101 U. S. 528; *Chicago* v. *Sheldon*, 9 Wall. 50, 55 ; *Des Moines* v. *Chicago, Rock Island &c. Railway*, 41 Iowa, 569; *New York City* v. *Second Avenue Railroad*, 32 N. Y. 261; *Burlington* v. *Burlington Street Railway*, 49 Iowa, 144, 147; *State* v. *Corrigan St. Railway*, 85 Missouri, 263; *Quincy* v. *Bull*, 106 Illinois, 337; *Atlantic City Water Works* v. *Atlantic City*, 39 N. J. Eq. 367.

*Mr. J. L. Kennedy, Mr. C. L. Wright, Mr. E. H. Hubbard* and *Mr. D. B. Henderson* for defendant in error.

Mr. Justice BLATCHFORD, after stating the case, delivered the opinion of the court.

The Supreme Court of Iowa, in view of section 1090, held, that the city of Sioux City, by granting the authority to construct and operate the railway on the condition of paving between the rails, did not limit its authority to make and enforce other regulations and requirements, as authorized by section 1090; that, although, by the contract, the company bound itself to pave between the rails, the city did not bind itself not

to exercise the authority conferred upon it by section 1090, to impose other conditions upon the exercise of the franchise of the company, which, in the judgment of the city, might be required for the public good; and that the city was authorized to impose on the company the burden of the additional paving outside of the rails.

No question is raised as to the regularity or legality of the proceedings for assessment for the cost of paving outside of the track, except the question of the power of the city to impose the assessment, in view of the franchise granted to the company. The only contention is that, in view of the provision of section 11 of the ordinance of December 12, 1883, there was no power in the city to require the company to pave anywhere except between the rails. On the other hand, the defendants contend that section 11, while requiring the company to pave between the rails, does not provide that it shall be required to pave only between the rails. Reference is also made by the defendants to section 8 of the ordinance of December 12, 1883, which provides for the payment by the company into the city treasury of an annual license fee of $25 on each car used by it, "in addition to the other taxes lawfully assessed and collected;" and it is contended that, as the legislature subsequently passed a general law requiring all street railway companies to pay for the cost of paving one foot outside of the rails, this tax or assessment was charged lawfully against the company. It is also contended that, no matter what the provisions of the ordinance were, it was within the power of the legislature to enact laws imposing an additional tax upon the company, and within the power of the city, acting under such a law, to make the charge upon the property of the company; and that, under section 6 of the act of March 15, 1884, the assessment and tax in question were made against the property of the company, and the city merely carried out the direction of the statute and did not impose the additional burden by its own voluntary act.

The company took its franchise subject to such legislation as the State might enact. This is plain from the provision of section 1090 of the Code. The company took its charter sub-

ject to the provisions of that section.   The general assembly deemed it necessary for the public good to require street railways to pay for the paving of one foot outside of the tracks, probably upon the view that it was right that they should be required to pave that part of the street which they used almost exclusively.   It was not in the power of the city, by any contract with the company, to deprive the legislature of the power of taxing the company.   *Railway Co.* v. *Philadelphia,* 101 U. S. 528; *Spring Valley Water-Works* v. *Schottler,* 110 U. S. 347; 2 Morawetz on Private Corporations, §§ 1061, 1062, 1066, 1085, 1095, 1097.

Under section 1090 of the Iowa Code, the legislature had the power not only to repeal and amend the articles of incorporation of the company, but to impose any conditions upon the enjoyment of its franchise which the general assembly might deem necessary for the public good.   The reservation of this power was a condition of the grant.   The city council could make no arrangement with the company which would not be subject, under that section, to the superior power of the general assembly.

The cases referred to by the plaintiff in error, of *Des Moines* v. *Chicago &c. Railway Co.,* 41 Iowa, 569, and *Burlington* v. *Burlington Street Railway Co.,* 49 Iowa, 144, are not applicable to the present case, because in them there was not involved any question of the power of the State to impose additional burdens or conditions on the enjoyment of the franchise; and section 1090 of the Code was not in any manner involved or referred to in them.   The questions raised in the present case relate solely to the subject of taxation, which is a matter under the authority of the State.

Moreover, the city derived from the State alone its power to grant a license to the company.   The right to operate the railway in the streets is a franchise obtained through power given to the city by the State, but the State reserved the power to regulate such franchise and impose conditions upon it.   It reserved the power to determine the question of the exemption of the company from taxation and to prescribe what burdens should be imposed upon it for the public good in the enjoy-

ment of its franchise. Manifestly, such power of the State would exist if the right to occupy the streets with tracks was granted to the company directly by an act of the legislature of the State; and the case is not changed by the fact that the franchise was granted by the city. There is nothing in the ordinance of the city council which takes away the power of the State and the city to impose additional taxes on the property of the company, or which indicates an intent that no further or different tax should be subsequently imposed on its property. *Delaware Railroad Tax*, 18 Wall. 206, 227; *Railway Co.* v. *Philadelphia*, 101 U. S. 528, 536; *Commonwealth* v. *Easton Bank*, 10 Penn. St. 451.

No question can arise as to the impairment of the obligation of a contract, when the company accepted all of its corporate powers subject to the reserved power of the State to modify its charter and to impose additional burdens upon the enjoyment of its franchise. Under the act of March 15, 1884, it was made a condition of the enjoyment of its franchise by the company, that, when the city should determine that the streets should be paved, the company should bear a certain portion of the cost thereof; and any prior contract between the company and the city in regard to paving was subject to the provisions of section 1090 of the Code. There was nothing in the ordinance of December 12, 1883, which bound or could bind the city not to exercise its statutory authority to impose other conditions upon the exercise of the rights of the company.

Our conclusion, therefore, is that there was no contract between the company and the State or the city, the obligation of which was impaired by the laying of the tax in question.

*Judgment affirmed.*